UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN MOTOR TECHNOLOGIES LLC,

                  Plaintiff,                           Case Number 19-10485

v.                                                Honorable David M. Lawson

VOLKSWAGEN AKTIENGESELLSCHAFT
and VOLKSWAGEN GROUP OF AMERICA,
INC.,

                  Defendants.

_____/

## OPINION AND ORDER DENYING VOLKSWAGEN AKTIENGESELLSCHAFT'S MOTION TO DISMISS, QUASHING SERVICE OF PROCESS, AND ORDERING PROPER SERVICE

Volkswagen Aktiengesellschaft (VWAG) manufactures motor vehicles in Germany and sells thousands of them throughout the United States, including Michigan, through its subsidiary, Volkswagen Group of America (VWGA). Plaintiff Michigan Motor Technologies (MMT) has alleged in an amended complaint that the defendants' automobiles incorporate components that infringe MMT's patents. VWAG contends that the case should be dismissed because service of process was defective, and, despite its manufacture of vehicles for the U.S. market, it has no presence in this forum and therefore the Court has no personal jurisdiction over it. Although MMT will have to fix its defective service of process, the idea that an American federal court cannot enforce the patent laws against a German company that manufactures thousands of cars intended for distribution in this country is not supported by the governing law or, coincidently, by common sense. The motion to dismiss will be denied.

### I.  Facts

VWAG, a multinational corporation with its central headquarters in Wolfsburg, Germany, is the parent company of the Volkswagen Group of companies. The Group designs, manufactures,

and sells twelve brands of vehicles: Volkswagen Passenger Cars, Volkswagen Commercial Vehicles, Audi, Porsche, Bugatti, Lamborghini, Ducati, Scania, Man, Seat, and Skoda.

VWAG's Board of Management is the ultimate body responsible for managing the Group. The Supervisory Board appoints, monitors, and advises the Board of Management; the Board of Management and the Supervisory Board consult closely on the Group's major strategic decisions. VWAG develops a global marketing and pricing strategy that it provides to each region, including the United States. Each Volkswagen Group brand is managed by a brand board of management. The brand boards strive to meet targets and requirements set by the VWAG's Board of Management.

VWAG has no physical presence in Michigan. It designs, produces, and sells its vehicles in Germany for distribution throughout the world. VWAG reaches the American market through its wholly-owned subsidiary, co-defendant Volkswagen Group of America, which is headquartered in Herndon, Virginia. Volkswagen Group of America purchases vehicles from VWAG in Germany, takes title of those vehicles in Germany, then imports those vehicles to the United States for distribution to its dealers, who then sell the vehicles to consumers. Volkswagen Group of America is responsible for the sale, marketing, and distribution of vehicles in the United States and sells them to dealers at prices that it determines within those guidelines.

Although VWAG and Volkswagen Group of America are distinct companies with different leadership boards, they are still substantially related. In its public corporate reports, VWAG does not differentiate itself from its subsidiaries in its financial reporting to its shareholders, Group-wide performance goals, sales distribution figures, or global compliance initiatives. And the Volkswagen Group maintains a global compliance organization, comprised of divisional and

regional offices, which supports and advises each brand to conduct its business activities under relevant laws and internal regulations.

On February 18, 2019, MMT filed its complaint against Volkswagen Group of America for allegedly infringing twenty of its patents.  Two months later, MMT amended the complaint to add VWAG as a defendant.

On May 6, 2019, Michael Palizzi entered an appearance "as an attorney for Defendants Volkswagen Aktiengesellschaft and Volkswagen Group of America, Inc.," which stated that "[s]ervice of all notices and pleadings filed in this action should be made on undersigned counsel." Seven attorneys from Wilmer Cutler Pickering Hale and Dorr LLP also entered appearances for both defendants on July 24, 2019.  However, unlike Mr. Palizzi's appearance, the appearance notices for the Wilmer Hale attorneys did not include the provision that service should be made on them.

On June 18, 2018, MMT delivered a copy of the summons and complaint against VWAG to a VWAG and Volkswagen Group of America facility in Auburn Hills, Michigan, and also tried to deliver a copy to Volkswagen Group of America's registered agent, Corporation Service Company, which refused service.  MMT then tried to serve attorney Palizzi, first on June 21 and again on June 24, 2018.  On June 24, Palizzi sent an email to counsel for MMT stating that he was not authorized to accept service on behalf of VWAG.  The next day, a process server emailed defense counsel to "ASAP . . . arrange delivery of the documents."  Defense counsel replied that he was "not authorized to accept service for Volkswagen AG."  Finally, on June 28, MMT placed a copy of the summons and complaint against VWAG on defense counsel's front desk.  MMT never tried to serve VWAG through the Hague Convention.

Defendant VWAG filed its first motion to dismiss on August 12, 2019, alleging lack of personal jurisdiction and insufficient service of process.

## II.  Waiver

MMT argues that when attorney Palizzi filed an appearance that instructed the plaintiff to serve all notices and pleadings on him, VWAG waived its right to contest the adequacy of service of process and personal jurisdiction.  Although Palizzi waited over three months after filing his appearance to file VWAG's motion to dismiss, no other substantive filings intervened, and no waiver occurred.

Because this is a patent case, a district court applies the law as stated by the Federal Circuit instead of the regional circuit.  *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed. Cir. 1995).  The Federal Circuit "places waiver of personal jurisdiction within the discretion of the trial court, consistent with the trial court's broad authority to manage actions pending before it." *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005) (citing *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 882 (Fed. Cir. 1997); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991)).  The court "defers to the judgment of the trial court on such matters closely associated with the standard functions of the adjudicative process, so long as that judgment is not an abuse of the trial court's discretion."  *Ibid.*

MMT relies primarily on cases decided by the Sixth Circuit, which outline a stricter waiver rule.  In *Gerber v. Riordan*, for instance, the court held that the "[d]efendants' filings of a general appearance with the district court constituted a voluntary acceptance of the district court's jurisdiction, and therefore, a waiver of [the d]efendants' personal jurisdiction defense."  649 F.3d 514, 520 (6th Cir. 2011).  However, various courts have expressed skepticism about the Sixth Circuit's approach, including district courts within the Circuit.  *See Pouyeh v. Public Health Trust*

*of Jackson Health Sys.*, 718 F. App'x 786, 791 (11th Cir. 2017) (declining to adopt the rule in *Gerber* because "nothing in Rule 12 contemplates that an attorney's entry of a notice of appearance on a defendant's behalf amounts to a waiver of a Rule 12 defense. Nor would it make much sense if it did, because the notice is not a response to the complaint."); *Leadford v. Bull Moot Tube Co.*, No. 15-13565, 2016 WL 1022965 at *2 (E.D. Mich. Mar. 15, 2016) (applying *Gerber* as binding precedent, but noting that "[t]he rule is harsh insofar as it relies on a historical distinction based on counsel's labeling of his or her appearance as general or special and because it is not supported by the current law of federal procedure" as the distinction was abolished in 1938); *see also* 5C Charles A. Wright & Arthur R. Miller, *Fed. Practice and Proc.*, § 1391 (3d ed. 2020) ("Courts have continued to maintain that if the defendant has properly raised a defense by motion or in the answer, even though the defendant participates in the litigation on the merits, the defense still can be preserved and reasserted later in the action").  And in *King v. Taylor*, the Sixth Circuit cast doubt on its holding in *Gerber*, observing that a "written appearance filed by [the defendant's] counsel one month before [the defendant] moved for dismissal on the basis of lack of service does not constitute forfeiture."  694 F.3d 650, 660 n.7 (6th Cir. 2012).  The court also noted that *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 n.7 (6th Cir. 1991), a case decided before *Gerber*, held that an appearance by counsel, filed after properly raising lack of proper service in the first responsive pleading, did not waive the defense.  Another judge in this district reconciled *King* and *Gerber* by holding that the "entry of a general appearance waives the defense of personal jurisdiction only if it is not accompanied by a pleading or motion in compliance with Rule 12 or it is followed by litigious conduct."  *ABG Prime Grp., Inc. v. Mixed Chicks, LLC,* No. 17-13257, 2018 WL 7134647, at *7 (E.D. Mich. May 16, 2018).

Here, attorney Palizzi filed a general appearance on May 6, 2019, but did not file a motion to dismiss for insufficient service of process until August 12, 2019.  That three-month delay, however, is inconsequential, since there were no other substantive filings.  And it pales next to *Gerber*, where the defendant's attorney filed a general appearance and robustly litigated the case for two-and-a-half years before filing a motion to contest personal jurisdiction.  *Gerber*, 649 F.3d at 518-19.  And *Gerber*'s harsh rule does not govern this patent case.  *Akro Corp.,* 45 F.3d at 1543. Instead, the highly deferential standard adopted by the Federal Circuit applies.  *Rates Tech. Inc.*, 399 F.3d at 1307.

But even applying Sixth Circuit precedent does not mandate the outcome requested by the plaintiff.  In *ABG*, the court identified a "lack of consistency" among Sixth Circuit precedent on this issue, and held that simply filing a general appearance is not sufficient to waive personal jurisdiction, drawing on authority from the Eleventh Circuit and prominent academics.  *ABG,* 2018 WL 7134647, at *8 (citing *Pouyeh*, 2017 WL 5592268, at *3 (11th Cir. Nov. 21, 2017); 5b Charles A. Wright & Arthur R. Miller, *Fed. Practice and Proc.*, § 1344 (3d ed. 2004)).  The court explained, "[i]mportantly, neither *Gerber* nor any of its predecessors concerned facts where a defendant entered a general appearance and then proceeded to file an answer or motion raising a personal jurisdiction defense within the procedural time allotted to it and in accordance with Rule 12." *Id.*, at *9.  In *ABG*, the defendant filed a general appearance, then, in its first responsive filing, submitted a motion to dismiss for lack of personal jurisdiction.  *Ibid.*  The court concluded that the defendant did not waive its ability to challenge personal jurisdiction.  *Ibid.*

Although VWAG's motion lagged behind the general appearance, it was filed within the extended deadline allowed by the Court and as the partied agreed.  The defendant's conduct did not "give the plaintiff a reasonable expectation that the defendant will defend the suit on the

- 6 -

merits." *Innovation Ventures, Ltd. Liab. Co. v. Custom Nutrition Labs, Ltd. Liab. Co.*, 912 F.3d 316, 332 (6th Cir. 2018). The defenses were not waived by a general appearance.

### III. Personal Jurisdiction

When determining personal jurisdiction in a patent case, the Court again applies the law of the Federal Circuit, not the regional circuit, because the question "is intimately involved with the substance of the patent laws." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012); *see also Maxchief Inv. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1138 (Fed. Cir. 2018). But the Federal Circuit will look to the law of the regional circuit where the case arises for "procedural matters that are not unique to patent law." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994).

When personal jurisdiction is challenged in a motion filed under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the Court's authority to proceed against the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). The Court can look to a number of sources for the pertinent information: pleadings, affidavits, declarations, testimony from an evidentiary hearing. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017) (quoting *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017)). But unless the Court holds an evidentiary hearing, "a plaintiff need only make a prima facie showing that defendants are subject to personal jurisdiction." *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019).

Although the substantive law comes from the Federal Circuit, the rule there directs the inquiry back to the law of the forum state. *Acorda Therapeutics Inc. v. Mylan Pharm., Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016). If the defendant would be subject to personal jurisdiction in the

forum state, the Court then determines whether its exercise of personal jurisdiction over the defendant comports with due process. *Ibid.*

However, Federal Rule of Civil Procedure 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009). "The third requirement under Rule 4(k)(2) — the due process analysis — contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* at 1295. "Rule 4(k)(2), therefore, serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Id.* at 1296.

There is no question that MMT's claims arise under federal law. MMT believes that VWAG is subject to the general personal jurisdiction of the Michigan courts. (VWGA disputes that point, thereby satisfying the second criterion, since it has not identified any state in which it would be amenable to suit in the United States. *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009) (holding "that if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." (citation and quotation marks omitted))). MMT, however, is incorrect.

Under Michigan's long-arm statute, the state's jurisdiction "extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one." *MAG IAS Holdings*, 854 F.3d at 899 (quoting *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016)). In Michigan, jurisdiction over a corporation can exist on the basis of general personal

jurisdiction, *see* Mich. Comp. Laws §§ 600.701 and 600.711, or limited personal jurisdiction, *see* Mich. Comp. Laws §§ 600.705 and 600.715.

MMT argues that the Court has general personal jurisdiction over VWAG because "VWAG continuously engages in business dealings with Volkswagen Group of America, particularly through its Supervisory Board and Board of Managers, to whom its brand board for Volkswagen Group of America . . . answers." The governing law does not support that argument.

"A court with general jurisdiction may hear any claim against [the] defendant, even if all the incidents underlying the claim occurred in a different State," but "'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California*, --- U.S. ---, 137 S. Ct. 1773, 1780 (2017). (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). It is true that under Michigan law, general personal jurisdiction exists over any corporation that is incorporated in Michigan, consents to jurisdiction, or engages in continuous and systematic business in Michigan. Mich. Comp. Laws § 600.711. But general jurisdiction requires that a party's contacts be so "continuous and systematic as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 138-39 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564, U.S. 915, 919 (2011)). For a corporation, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (quotations omitted).

In *Daimler*, the Supreme Court clarified *Goodyear* by holding that Daimler AG, an international German company, could not be subject to California's general jurisdiction because Daimler was not "at home" in California, even if the contacts of its U.S. subsidiary could be imputed to it on an agency theory. *Daimler,* 571 U.S. at 141-42. The Court held that California could not exercise general personal jurisdiction over Daimler, even though it assumed that

California courts could exercise general jurisdiction over the subsidiary. *Id.* at 133-36.   The Supreme Court explained, "The Ninth Circuit's agency theory thus appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*."  *Id.* at 136.

Like the defendant in *Daimler*, VWAG's place of incorporation and principal place of business — "the paradigm bases for general jurisdiction" — is Germany, not Michigan. *Daimler*, 571 U.S. at 137.  It has no offices or facilities in Michigan, does not own real estate or pay taxes in Michigan, does not maintain a mailing address or phone number in Michigan, and does not employ anyone in Michigan.  Nor is it qualified, licensed, authorized, or registered to do business in Michigan.

General personal jurisdiction over VWAG cannot be based on its relationship with its subsidiary, Volkswagen Group of America, for a couple of reasons.  For one, the subsidiary itself is not "at home" in Michigan; although it has offices here, it is incorporated in New Jersey and has its principal place of business in Virginia.  Moreover, the subsidiary is its own juridical entity, as confirmed by MMT's own exhibit, which states, "[e]ach brand in the Volkswagen Group is managed by a brand board of management, which ensures its independent and self-contained development and business operations," and that "the companies of the Volkswagen Group are managed by their respective managements on their own responsibility"  VWAG Annual Report, ECF No. 60-1, PageID.4102.  MMT's theory would essentially subject VWAG to general personal jurisdiction anywhere Volkswagen Group of America operates, which is the exact "sprawling view of general jurisdiction" the Supreme Court rejected in *Daimler.  Daimler*, 571 U.S. at 136.

MMT also argues that the Court has general jurisdiction over VWAG because it "contracts with residents of [Michigan] when purchasers of its vehicles enter into its USA Warranty and Maintenance Agreement after purchasing a qualified vehicle designed and manufactured by VWAG and targeted at the forum."  MMT's Br., ECF No. 60, PageID.4027 (citing USA Warranty, ECF No. 60-4, PageID.4401).  However, the warranty that MMT cites expressly states, "[t]his New Vehicle Limited Warranty is issued by Volkswagen Group of America, Inc."  USA Warranty, ECF No. 60-4, PageID.4407.

VWAG and Volkswagen Group of America are clearly distinct companies, and subjecting VWAG to general personal jurisdiction in this case would collide with the understanding of personal jurisdiction the Supreme Court refined in *Goodyear* and *Daimler.*

Because VWAG is not subject to the general jurisdiction of any state, *Synthes*'s second criterion under Rule 4(k)(2) is satisfied.

To determine whether the exercise of jurisdiction comports with due process, the Federal Circuit, under the framework for analyzing specific personal jurisdiction, employ "a three-part test considering whether: (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair."  *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1000 (Fed. Cir. 2018) (citing *Synthes*, 563 F.3d at 1297).  If the plaintiff satisfies the burden on the first two elements, "the burden then shifts to the defendant to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Ibid.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

When examining the defendant's activities under Rule 4(k)(2) in a patent infringement case, the forum is not any particular state, but rather the United States as a whole.  *Id.* at 1001;

*Synthes*, 563 F.3d at 1295.  From that vantage point, "the jurisdictional inquiry is *relatively easily* discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum."  *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (emphasis added).  For instance, the Federal Circuit has held that "a Brazilian defendant purposefully directed its allegedly infringing activities to the United States where its representative brought the accused products into the United States from Brazil to display the items at a trade show."  *M-I Drilling*, 890 F.3d at 1001 (citing *Synthes*, 563 F.3d at 1297–98); *see also Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1234 (Fed. Cir. 2010) ("Abbyy Production has purposefully imported the accused products into California, made those products available for sale through an established distribution chain, and the cause of action for patent infringement is alleged to arise out of these activities. No more is required for specific jurisdiction."); *Beverly Hills Fan*, 21 F.3d at 1565 ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities.  No more is usually required to establish specific jurisdiction.").

In this case, VWAG acted in concert with its wholly-owned subsidiary, Volkswagen Group of America, to ship to and sell thousands of vehicles in the United States — vehicles that incorporated the allegedly infringing components.  Its conduct plainly amounts to "an action of the defendant purposefully directed toward the forum."  *Asahi Metal Industries Co. v. Superior Court of California*, 480 U.S. 102, 112 (1982) (opinion of O'Connor, J.); *see also id.* at 111 (noting that conduct of a defendant that may indicate purposeful availment includes, "designing the product for the market in the forum State, advertising in the forum State, establishing channels or providing regular advice to customers in the forum state, or marketing the product through a

distributor who has agreed to serve as the sales agent in the forum State").    There can be little doubt that VWAG intended to send the products into the forum.  It established a subsidiary for that very purpose and called it Volkswagen Group *of America*.  In that effort, the two appear to have acted as one; there is no differentiation between VWAG and its subsidiaries in its financial reporting to its shareholders, its performance goals, its sales and distribution figures, or its global compliance initiatives. VW Annual Report, ECF No. 60-3; VW Press Release, ECF No. 64-4, PageID,4394. And because Volkswagen Group of America actively sells VWAG's products through licensed dealerships throughout the country, both entities should reasonably anticipate being haled into court here.  *Beverly Hills Fan*, 21 F.3d at 1566 ("[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product . . . , it is not unreasonable to subject it to suit") (citing *World-Wide Volkswagen v. Wooden*, 444 U.S. 286, 297 (2004)).  And since "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim" of patent infringement, *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998), nothing more is required to show that VWGA purposefully directed its activities at the United States.  For the same reason, it is easy to conclude that the claim arises out of or relates to the defendant's activities with the forum.

Under the framework employed by the *Synthes* court, the burden now shifts to VWAG to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.  Five factors are considered: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in

obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies." *M-I Drilling*, 890 F.3d at 1002 (citing *Burger King*, 471 U.S. at 477).

The second and third factors favor the plaintiff, a United States domiciliary that brought suit in a U.S. court. *See ibid.* Generally, cases implicating the third factor "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568 (citing *Burger King,* 471 U.S. at 477). This is not one of those rare cases. The United States' interest in the dispute is significant: to discourage injuries occurring within the country from violation of its patent laws. *See Keeton v. Hustler Mag, Inc.*, 465 U.S. 770, 776 (1984).

Certainly, VWAG will face a burden in litigating this case — it "will be required to traverse the distance between its headquarters in [Germany] and the district court in [Michigan], and will also be required to submit itself to a foreign nation's judicial system." *Beverly Hills Fan*, 21 F.3d at 1569. However, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *World-Wide Volkswagen*, 444 U.S. at 294. And VWAG "through its business dealings with [Volkswagen Group of America] cannot profess complete ignorance of the judicial system of the United States." *Beverly Hills Fan*, 21 F.3d at 1569. Therefore, the burden on VWAG is not sufficiently compelling to outweigh the interests of MMT and the courts of the United States in adjudicating the dispute.

The fourth and the fifth factors "are concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy." *Synthes*, 563 F.3d at 1300. "But the forum here is the entire United States, so no competing U.S. forum is

- 14 -

available to [MMT] for its infringement claims.  As such, no other U.S. forum exists with respect

to which there is a clash of social policies or with which to compare the efficiency of a resolution."

*M-I Drilling*, 890 F.3d at 1002.

On balance, the scale tips decidedly in favor of the reasonableness of exercising personal

jurisdiction in this case over VWAG.

## IV.  Service of Process

VWAG also argues that service of process was insufficient because MMT served only

Volkswagen Group of America and failed to serve VWAG "personally" as required by Michigan

law.  It denies that Volkswagen Group of America is its agent authorized to accept process, and

argues that it is a completely separate entity over which VWAG does not exercise such a degree

of control as to establish a principal-agent relationship for the service of process.  Instead, VWAG

insists that MMT must follow the rules of the Hague Convention for service on a foreign entity.

MMT disagrees, pointing to *Volkswagenwerk Aktiengesellschaft v. Schlunk*, where the

Supreme Court held that the Hague Convention did not apply when VWAG's American subsidiary

was served properly under state law, which deemed Volkswagen of America (Volkswagen Group

of America's predecessor company) an involuntary agent of VWAG.  486 U.S. 694, 700, 707-08

(1988).

MMT reads *Schlunk* too broadly.  The Court was quite clear that the validity of the service

of process — and the applicability of the Hague Convention (or not) — depends entirely on "the

internal law of the forum state."  *Id.* at 700; *see also id.* at 708 ("Where service on a domestic agent

is valid and complete under both state law and the Due Process Clause, our inquiry ends and the

Convention has no further implications.").

- 15 -

*Schlunk* arose in Illinois, which passed a statute that permitted foreign companies to be served involuntarily through any resident subsidiary. *Id*. at 707. Michigan law does not have a similar provision. Instead, Michigan law requires corporations to be "personally" served. The applicable Rule states:

Service of process on a domestic or foreign corporation may be made by

(1) serving a summons and a copy of the complaint on an officer or the resident agent;

(2) serving a summons and a copy of the complaint on a director, trustee, or person in charge of an office or business establishment of the corporation and sending a summons and a copy of the complaint by registered mail, addressed to the principal office of the corporation;

(3) serving a summons and a copy of the complaint on the last presiding officer, president, cashier, secretary, or treasurer of a corporation that has ceased to do business by failing to keep up its organization by the appointment of officers or otherwise, or whose term of existence has expired;

(4) sending a summons and a copy of the complaint by registered mail to the corporation or an appropriate corporation officer and to the Michigan Corporation and Securities Bureau if

(a) the corporation has failed to appoint and maintain a resident agent or to file a certificate of that appointment as required by law;

(b) the corporation has failed to keep up its organization by the appointment of officers or otherwise; or

(c) the corporation's term of existence has expired.

Mich. Ct. R. 2.105(D). The Rule also provides an alternative method of service for defendants who cannot be served through the preferred methods outlined above: "On a showing that service of process cannot reasonably be made as provided by this rule, the court may by order permit service of process to be made in any other manner reasonably calculated to give the defendant actual notice of the proceedings and an opportunity to be heard." Mich. Ct. R. 2.105(I)(1).

However, under Rule 4 of the Federal Rules of Civil Procedure, the procedures governing the manner of service (as opposed to the form of service) are construed strictly. *See Mid–Continent Wood Prods., Inc. v. Harris*, 936 F.2d 297, 300–01 (7th Cir. 1991); *see also Friedman v. Estate of Presser*, 929 F.2d 1151, 1155–56 (6th Cir. 1991) (reiterating that actual notice is no substitute for personal service of process). Where Rule 4 and the service of process provisions of a state conflict, Rule 4 controls. *Hanna v. Plumer*, 380 U.S. 460, 463–65 (1965). Rule 4(f)(1) states that a party may be served outside of the United States by "internationally agreed means . . . such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."

"By requiring service on a corporate officer or principal office of the corporation, the Michigan Rule can fairly be said to contemplate 'transmit[al of] a judicial . . . document for service abroad,' thereby requiring application of the terms of the [Hague] Convention." *Lafarge Corp. v. Altech Environment, U.S.A.*, 220 F. Supp. 2d 823, 832 (E.D. Mich. 2002) (citing Mich. Ct. R. 2.2105(I); *see also In Re Auto. Parts Antitrust Litig*, 2017 WL 10808851 at *2 (ED. Mich. Nov. 2, 2017) (requiring plaintiff to serve Japanese defendant under Hague Convention); *Glob. Lift. Corp. v. Hiwin Corp.*, 2014 WL 4536743, at *3 (E.D. Mich. Sept. 11, 2014) (attempted service of process on two Taiwanese corporations by serving American subsidiary was improper under Michigan law). In fact, under Michigan law, "[i]t is a well recognized principle that separate corporate entities will be respected." *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547, 537 N.W.2d 221, 224 (1995).

MMT argues at great length that it served VWAG properly because Volkswagen Group of America operates as its agent. ECF No. 60, PageID.4015-16 (citing *Manlove v. Volkswagen Aktiengesellschaft*, 2019 WL 1980688 (E.D. Tenn. May 3, 2019); *Dewey v. Volkswagen AG*, 558

F. Supp. 2d 505, 513 (D.N.J. 2008); *Schlunk v. Volkswagenwerk Aktiengesellschaft*, 145 Ill. App. 3d 594, 608, 503 N.W.2d 104, 1123 (1986); *Lamb v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95, 101 (S.D. Fla. 1985)).  However, as the defendant points out, none of these cases apply Michigan law; they apply the process service laws of other states, which are not applicable here. This Court squarely addressed this issue in *Lafarge*, which expressly held that "[n]o provision within Rule 105 allows service on a parent corporation to be achieved by delivery of process to its subsidiary." *Lafarge*, 220 F. Supp. 2d at 832.

MMT argues that it properly served VWAG by serving its local counsel, who, in his general appearance, stated that "[s]ervice of all notices and pleadings filed in this action should be made on undersigned counsel."  ECF No. 8.  Although the language of the appearance may be somewhat misleading, attorney Palizzi was correct when he later informed MMT that he was not authorized to accept service for VWAG.  He was not VWAG's corporate officer and was never designated as a "registered agent" as required by Michigan law.  Mich. Ct. R. 2.105(D)(2).  As another judge of this Court explained in *Automotive Parts*, "whether service on [a foreign corporation] must be effectuated under the Hague Convention hinges on whether Michigan law allows for service on a foreign company through its domestic subsidiary *or counsel*," the Court confirmed that under Michigan law, "a party may not serve a foreign company involuntarily through a resident subsidiary."  *Automative Parts*, 2017 WL 10808851, at *2 (emphasis added).  Michigan law requires service on a corporate officer or principal office of the corporation, which did not occur here. Mich. Ct. R. 2.105(D)(1)-(2).

"Although dismissal of the action on this ground might be warranted in some circumstances, normally the Court would quash service and allow the plaintiff to attempt proper

service." *Lafarge*, 220 F. Supp. 2d at 832 *(citing Umbenhauer v. Woog,* 969 F.2d 25, 30 (3d Cir. 1992)).  That is the course we follow here.

V.  Conclusion

The Court has personal jurisdiction over defendant Volkswagen Aktiengesellschaft in this patent infringement case.  However, service of process on that entity was insufficient.  The plaintiff shall have 90 days to effectuate proper service.

Accordingly, it is **ORDERED** the motion by defendant Volkswagen Aktiengesellschaft to dismiss for insufficient service of process and lack of personal jurisdiction (ECF No. 28) is **DENIED**.

It is further **ORDERED** that service of process on defendant Volkswagen Aktiengesellschaft is **QUASHED**.

It is further **ORDERED** that the plaintiff shall effectuate proper service of process **on or before October 8, 2020**.

s/David M. Lawson___<br>DAVID M. LAWSON<br>United States District Judge

Date:  July 10, 2020